**[Cite as *State v. Long*, 2020-Ohio-4090.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                           Court of Appeals Nos. WD-19-021
                                                                                          WD-19-022
     Appellee

                                                                     Trial Court Nos. 2018CR0141
v.                                                                                        2017CR0556

Stephen D. Long                                    **DECISION AND JUDGMENT**

     Appellant                                       Decided:  August 14, 2020

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Neil S. McElroy, for appellant.

* * * * *

**MAYLE, J.**

**{¶ 1}** In this consolidated appeal, appellant, Stephen Long, appeals the March 8,

2019 judgments of the Wood County Court of Common Pleas sentencing him to an

aggregate prison term of ten years.  For the following reasons, we affirm.

## I.  Background and Facts

{¶ 2} On November 16, 2017, Long was indicted on five counts of pandering sexually-oriented matter involving a minor in violation of R.C. 2907.322(A)(1), all second-degree felonies, and one count of possessing criminal tools in violation of R.C. 2923.24(A), a fifth-degree felony.  On March 22, 2018, the grand jury issued a second indictment, charging Long with an additional eight counts of pandering sexually-oriented matter involving a minor in violation of R.C. 2907.322(A)(1), all second-degree felonies, and two counts of illegal use of a minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(1), both second-degree felonies.

{¶ 3} The facts relevant to this appeal are largely drawn from the affidavit submitted by Perrysburg Police Division ("PPD") Detective Sergeant Mark Baumgardner with his application for a warrant to search Long's home.  According to the affidavit, on May 1, 2017, a "confidential informant" made a complaint to the PPD that the resident of 515 East Second Street in Perrysburg was masturbating to child pornography.  Although there is very little information about the "informant" in the affidavit, Baumgardner implied that the informant was Long's neighbor.  For example, Baumgardner said that the informant "could see inside the residence of 515 East Second Street from the interior of [the informant's] residence * * *" and "noticed what he thought could be child pornography, from his window, and then decided to get a closer look."  To do so, Baumgardner said that the informant "went outside of his residence and walked up to the window on the southeast corner of 515 East Second Street * * *."  The informant also

2.

knew that the person in the home watching the videos was Long and that Long was the only person who lived at 515 East Second Street.

{¶ 4} When the investigating officer, Officer Patrick McGuffin of the PPD, responded to the informant's home, the informant told McGuffin that he could see Long sitting in front of a computer through the window. The informant "observed what he believed to be child pornography on the screen." The informant walked outside to get a closer look and tried to record video of what he saw, but the video did not turn out clearly.

{¶ 5} From inside the informant's house, McGuffin could see Long sitting in front of a computer monitor inside his house, but did not see any child pornography on the screen. The informant offered to show McGuffin the route he took to peer in Long's window and took McGuffin "out of the east side of [the informant's] residence and walked around back, and then up the driveway of 515 East Second Street near the window on the southeast corner of the residence at 515 East Second Street."

{¶ 6} When McGuffin looked in the window, he saw "a white male with medium-to short-brown hair" sitting at a desk with two computer monitors on it. He saw several video clips on the right monitor that showed two female children—who McGuffin estimated to be five or six years old—sucking on an adult male's penis.

{¶ 7} Baumgardner followed up on McGuffin's investigation by interviewing the informant. During the interview, the informant explained that he first noticed that the blinds on Long's window were open and that Long was sitting at the computer. He then

3.

noticed, from his window, what looked like a video of a "small child in a red night gown [sic] or dress slowly being taken off," and saw that Long appeared to be masturbating, so he decided to investigate further. The informant went up to Long's window and saw a video of a female child who was approximately ten years old using a vibrator on her bare vagina. The informant showed Baumgardner the video he recorded while looking in Long's window, but Baumgardner said that it was "difficult to make out what is on the screen with clarity."

{¶ 8} Based on the affidavit, the judge of the Perrysburg Municipal Court granted a search warrant that yielded videos and images of children engaged in sexual acts and resulted in the indictments of Long.

{¶ 9} Long filed two motions to suppress. In the first, he argued that the affidavit in support of the search warrant did not contain sufficient information to show that the PPD had probable cause to search Long's home because Baumgardner relied on facts provided by a "confidential informant," but did not provide any information about the reliability and veracity of the informant, and McGuffin corroborated the informant's information by illegally trespassing on the curtilage of Long's home.

{¶ 10} In response to the first motion to suppress, the state argued that the municipal court judge's probable-cause determination was proper because information from a citizen informant is considered inherently more reliable than information from a confidential informant, and Baumgardner "errantly" describing Long's neighbor as a "confidential informant" did not affect the veracity of the neighbor's information.

4.

Additionally, the PPD could rely on the neighbor's information because McGuffin corroborated the information. Moreover, the state argued, McGuffin saw the child pornography through a window with the blinds open while standing on Long's driveway, which was an area impliedly open to the public, so anything McGuffin saw was in plain view and was not obtained in violation of Long's constitutional rights.

{¶ 11} In the second motion to suppress, Long requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), alleging that Baumgardner knowingly and intentionally, or with reckless disregard for the truth, included in his affidavit false statements that were necessary to the finding of probable cause. He claimed that Baumgardner omitted from his affidavit a statement regarding the reliability of the confidential informant and admitted that McGuffin was initially unable to confirm the informant's report that Long was viewing child pornography. Long also claimed that Baumgardner failed to mention in his affidavit that, in order to look in Long's window and confirm what was on Long's computer monitor, the informant took McGuffin through a row of lilac bushes that divided Long's yard from the neighbor's yard and trespassed in Long's enclosed backyard before ending up on Long's driveway and peering in Long's window.

{¶ 12} In response to the request for a *Franks* hearing, the state argued that Long was not entitled to a hearing because Baumgardner did not put any misstatements or lies in the affidavit, and, even if he did, the remaining information in the warrant was sufficient to support the municipal court judge's probable-cause determination. The state

contended that the path McGuffin took to reach Long's window was immaterial to whether there was probable cause to search Long's house, so omission of the path from the warrant did not affect the probable-cause finding. The state also argued that Long's neighbor was a reliable source of information because the affidavit indicated that the informant was Long's neighbor and the neighbor was a "readily-identifiable person," was presumably familiar with Long, and "described in great detail that he saw [Long] masturbating to very specific child pornography * * *." The state also claimed that the informant was credible because McGuffin was able to corroborate the informant's report to the extent that McGuffin was able to see Long sitting in front of a computer monitor from McGuffin's vantage point inside the informant's house.

{¶ 13} The trial court denied Long's request for a *Franks* hearing and his motions to suppress. The court found that Long was not entitled to a *Franks* hearing because he failed to make a substantial preliminary showing that Baumgardner knowingly and intentionally made false statements in his affidavit for the search warrant, or that Baumgardner made any false statements with reckless disregard for the truth. Regarding Baumgardner's use of a "confidential informant" without providing any information regarding the informant's reliability or veracity, the court determined that "[a]lthough the witness in the search warrant affidavit is errantly referred to as a 'confidential informant,' the witness is clearly Long's neighbor and properly categorized as a concerned citizen eyewitness." Thus, the court concluded that Baumgardner properly relied on the information. Regarding the route McGuffin took to look in Long's window, the trial

6.

court found that "[w]hile the explanation of the route taken by Officer McGuffin may not provide the detail sought by Long, it cannot be said that the affiant knowingly and intentionally, or with reckless disregard for the truth, made misrepresentations regarding the route taken."

{¶ 14} As to the merits of Long's motions to suppress, the trial court acknowledged that McGuffin was on the curtilage of Long's home at the time he saw Long watching child pornography, but could not say whether McGuffin was on a part of the driveway that was impliedly open to the public because the court "did not hear evidence on the subject * * *." Regardless, the court determined that the good faith exception to the exclusionary rule would apply to any constitutional violations that might exist, so the fruits of the search warrant did not need to be suppressed.

{¶ 15} Following the denial of his motions to suppress, Long pleaded no contest to the charges in both indictments. The trial court found him guilty, and on March 5, 2019, sentenced him to a total prison term of ten years.

{¶ 16} Long appeals his convictions, raising one assignment of error:

The trial court erred as a matter of law when it denied Mr. Long's Motion to Suppress.

## II. Law and Analysis

{¶ 17} In his assignment of error, Long argues that the trial court erred by denying his motions to suppress because (1) the search warrant affidavit relied on a confidential informant without providing information about the informant's reliability and veracity,

7.

(2) the state failed to establish that McGuffin was on an area of Long's driveway that was impliedly open to the public, and (3) McGuffin entered the curtilage of Long's home without a warrant with the sole purpose of conducting a search.

{¶ 18} In response, the state argues that (1) the information provided by the "informant"—who was clearly Long's next door neighbor—supplied the Perrysburg Municipal Court judge with probable cause to issue the search warrant, (2) McGuffin's observations were legal because Long left his blinds open, putting his actions in plain view, and (3) Long's curtilage arguments fail for three reasons: (a) Ohio courts have not applied the rules in *Collins v. Virginia*, __ U.S. __,138 S.Ct. 1663, 201 L.Ed.2d 9 (2018), and *Florida v. Jardines*, 569 U.S. 1, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013), as broadly as Long claims, (b) McGuffin was on Long's property on legitimate police business (i.e., investigating a complaint that Long was masturbating to child pornography) and was in an area that was implied open to the public where a reasonably respectful citizen may go, and (c) the area where McGuffin was standing was not part of the curtilage under the test articulated in *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).

### A. Standard of review.

{¶ 19} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The trial court acts as the trier of fact. Although we must accept any findings of fact that are supported by competent, credible evidence, we conduct a de novo review to

8.

determine whether the facts satisfy the applicable legal standard, and this independent review is done without deference to the trial court. *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7, citing *Burnside* at ¶ 8; *State v. Jones-Bateman*, 6th Dist. Wood Nos. WD-11-074 and WD-11-075, 2013-Ohio-4739, ¶ 9.

{¶ 20} The Fourth Amendment to the United States Constitution and Article I, Section 14, of the Ohio Constitution prohibit unreasonable searches and seizures of persons or property. Central to those prohibitions is the requirement that search warrants issue based on probable cause. *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 34. In this context, "probable cause" means that the evidence presented in support of issuing the search warrant is sufficient for the magistrate to conclude that there is a fair probability that evidence of a crime will be found in a particular place. *Id.* at ¶ 35.

{¶ 21} A reviewing court does not conduct a de novo review of the magistrate's probable-cause determination. *State v. George,* 45 Ohio St.3d 325, 330, 544 N.E.2d 640 (1989). Instead, we must ensure that the magistrate had a substantial basis, considering the totality of the circumstances, for concluding that probable cause existed. *Castagnola* at ¶ 35, citing *George* at 329, *Illinois v. Gates,* 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). An issuing judge's probable-cause determination is entitled to "great deference." *State v. Williams*, 173 Ohio App.3d 119, 2007-Ohio-4472, 877 N.E.2d 717, ¶ 13 (6th Dist.), citing *George* at 330.

9.

**{¶ 22}** A judge may issue a search warrant based solely on facts presented by affidavit or may require an affiant to appear and present oral testimony to supplement an affidavit. Crim.R. 41(C)(1), (2). If the warrant is based only on information provided by affidavit, review of the issuing judge's probable cause determination—both at the trial and appellate court levels—is limited to the information found within the four corners of the affidavit.[1] *Castagnola* at ¶ 39 ("[T]he reviewing court is concerned exclusively with the statements contained within the affidavit itself." (Internal quotations omitted.)).

### B. The "confidential informant" was a citizen informant who was presumptively credible and reliable and whose tip was sufficient to provide probable cause for the search warrant.

**{¶ 23}** We first address Long's argument regarding the "confidential informant" who reported Long to the PPD. Long takes issue with the trial court's finding that the informant was a concerned citizen, rather than a confidential informant, and argues that Baumgardner was required to aver to the reliability and veracity of the informant or independently verify the informant's report through police work that did not violate

---

[1] A reviewing court may also look outside of the four corners of the affidavit if the defendant makes a "substantial preliminary showing" that the affidavit contains false statements that were necessary to the finding of probable cause and that the affiant made the statements knowingly and intentionally or with reckless disregard for the truth. *Franks*, 438 U.S. at 155-156, 98 S.Ct. 2674, 57 L.Ed.2d 667. Although Long raised a *Franks* claim in the trial court, on appeal, he does not challenge the trial court's denial of his request for a *Franks* hearing or its conclusion that Long failed to make the requisite "substantial preliminary showing" that Baumgardner's use of the term "confidential informant" and his description of the route the informant and McGuffin took from the informant's home to Long's window were material misrepresentations made knowingly and intentionally or with reckless disregard for the truth. Accordingly, we will confine our review to the four corners of the search warrant affidavit.

10.

Long's constitutional rights. Based on the totality of the circumstances, we find that the informant was a citizen informant and that his report to the police was sufficient to support the issuance of the search warrant.

### 1. The trial court correctly classified the informant.

{¶ 24} The law generally recognizes three categories of informants: "anonymous informants" about whom the police know little or nothing, "known informants" who are part of the criminal world, and "citizen informants" who have witnessed criminal activity. *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 720 N.E.2d 507 (1999). Given that the classification of an informant is relevant to the informant's reliability, we must determine which of these three categories applies to the "confidential informant" at issue in this case. Courts should, however, avoid performing a "conclusory analysis based solely upon these categories * * *" and instead must review all information in light of the totality of the circumstances. *Id.*

{¶ 25} That being said, "[i]nformation coming from a citizen eyewitness is presumed credible and reliable, and supplies a basis for a finding of probable cause in compliance with *Gates*." *State v. Garner*, 74 Ohio St.3d 49, 63, 656 N.E.2d 623 (1995). So "questions of veracity and reliability are essentially obviated in cases where the information tendered in support of a search warrant derives from a crime victim or citizen eyewitness." *State v. McCrory*, 6th Dist. Wood Nos. WD-09-074 and WD-09-090, 2011-Ohio-546, ¶ 21. The Supreme Court of Ohio has reasoned that requiring the police to provide evidence of past instances of the reliability of citizens—who generally provide

11.

police with information only once—would "create an undue burden on the issuance of search warrants * * *." *Garner* at 63.

{¶ 26} In contrast, information that comes from a known informant—a person who is part of the "criminal milieu"—is inherently more suspect. (Internal quotations omitted.) *Weisner* at 300. Consequently, a probable-cause finding based on a known informant's tip requires that the affiant either attest to the informant's reliability, veracity, and basis of knowledge *or* corroborate the informant's tip through independent police work. *State v. Nunez*, 180 Ohio App.3d 189, 2008-Ohio-6806, 904 N.E.2d 924, ¶ 19-20 (6th Dist.). That is, a known informant's word cannot be the sole basis for a finding of probable cause.

{¶ 27} Similarly, information from an anonymous informant is considered "comparatively unreliable" and any information from an anonymous source generally requires independent police corroboration in order to support a probable-cause finding. *Weisner* at 300, citing *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

{¶ 28} Here, the search warrant for Long's home was granted solely on Baumgardner's affidavit, so our probable-cause review is limited to the information in the affidavit. *Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, at ¶ 39. Based on that information, Long and the state dispute whether the "confidential informant" who reported Long's conduct to the PPD is properly classified as a citizen informant—whose report to the police is presumptively credible and reliable—or as a

12.

known or anonymous informant—rendering his report more suspect and requiring either attestation to his veracity and reliability or corroboration through independent police work.

{¶ 29} At the outset, we note that, regardless of what Baumgardner called the person from whom the PPD received its information, the label used is not dispositive of whether the search warrant affidavit demonstrated probable cause to search Long's house. *See Weisner*, 87 Ohio St.3d at 300, 720 N.E.2d 507 ("[T]he United States Supreme Court discourages conclusory analysis based solely upon [the] categories * * *" of informants.). Instead, we look at the totality of the circumstances. *Id.* Moreover, "[t]he validity of a search-warrant affidavit should not turn on the identifier that an officer selects when trying to protect a person's identity." *State v. Dibble*, 133 Ohio St.3d 451, 2012-Ohio-4630, 979 N.E.2d 247, ¶ 22.

{¶ 30} However, despite the state's claim that there is "no mystery who the concerned citizen was in this case," the affidavit is not that clear. In an apparent effort to protect the person who reported criminal conduct, Baumgardner did not say that the informant was Long's neighbor, provide any identifying information for the "confidential informant," or even indicate that the informant gave the PPD identifying information. Although at first glance these facts seem to support a finding that the informant was anonymous, courts have generally required very little identifying information to remove an informant's anonymity, so long as the person's "identity was ascertainable." *See Weisner* at 301 (noting that, in the context of reasonable suspicion for a traffic stop,

13.

"[c]ourts have been lenient in their assessment of the type and amount of information needed to identify a particular informant," for example, requiring only a tipster's occupation or some face-to-face contact between the tipster and a police officer).  Here, we know that McGuffin went to the informant's home and entered the informant's house, and that Baumgardner separately "made contact with the confidential informant, and he came in to speak with [Baumgardner] regarding this report."  We therefore know that the informant had face-to-face contact with both McGuffin and Baumgardner, and we presume that the informant provided the PPD with his name and contact information.  At the very least, it is clear from the affidavit that the informant's identity was readily ascertainable.

{¶ 31} Further, probable cause for a search warrant can be based on reasonable inferences drawn from the information in the affidavit.  *Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, at ¶ 41, citing *Gates,* 462 U.S. at 240, 103 S.Ct. 2317, 76 L.Ed.2d 527, *State v. Hobbs,* 133 Ohio St.3d 43, 2012-Ohio-3886, 975 N.E.2d 965, ¶ 10, and *State v. Jordan,* 11th Dist. Lake No. 97-L-211, 1998 WL 684231, *3 (Sept. 25, 1998) (O'Neill, J., dissenting).  The information in Baumgardner's affidavit allowed the issuing judge to reasonably infer that the person providing the tip was Long's neighbor.  First, the informant knew Long's identity, that he lived at 515 East Second Street, and that he lived alone.  Although it is not impossible for a stranger to learn these details about someone, it is reasonable to infer that neighbors know these details about each other.  Second, the informant was able to view Long's computer monitor from inside the

14.

informant's home.  For this to be true, common sense dictates that the informant's home was necessarily near Long's home.  Finally, based on Baumgardner's description of the path the informant took to lead McGuffin to Long's window—going out the side of the informant's house, around the back, and then up Long's driveway—it is reasonable to infer that the homes were close together.  Considered together, we find that this information is sufficient to remove the informant in this case from the category of "anonymous informant."

{¶ 32} For these same reasons, we find that the informant is also not a "known informant"—i.e., someone in the criminal world whose tip required Baumgardner to aver to the informant's reliability and veracity, or to independently corroborate the tip.  Indeed, the only argument Long makes regarding why we should classify the informant as a "known informant" is the fact that Baumgardner repeatedly called the informant a "confidential informant" in the affidavit.  But the label Baumgardner used is not dispositive.  *Weisner*, 87 Ohio St.3d at 300, 720 N.E.2d 507.  Moreover, we conduct a commonsense review of a search warrant affidavit—not a hypertechnical one.  *Dibble*, 133 Ohio St.3d 451, 2012-Ohio-4630, 979 N.E.2d 247, at ¶ 24, citing *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).  And an affiant's use of the wrong label for the person who provides information to police is not sufficient, standing alone, to call into question the veracity of a citizen eyewitness's tip.  *See McCrory*, 6th Dist. Wood Nos. WD-09-074 and WD-09-090, 2011-Ohio-546, at ¶ 26 (the detective failing to include the complainant-victim's name in the search warrant affidavit

15.

did not make the complaint-victim a "confidential informant" to whose veracity and reliability the detective was required to attest).

{¶ 33} Here, Baumgardner merely used the wrong label for the informant. There is no evidence that the person who reported Long to the police is someone from the criminal world whose information should be more carefully scrutinized. And finding that the informant was a known informant, based solely on Baumgardner's use of the phrase "confidential informant," would require us to interpret the affidavit in the hypertechnical manner that the Supreme Courts of Ohio and the United States have each eschewed.

{¶ 34} In sum, although Baumgardner did not specifically name the informant, the information he provided in the affidavit allowed the Perrysburg Municipal Court judge to reasonably infer that the PPD received its information from Long's neighbor. Because the neighbor's identity is ascertainable from the information in the affidavit, we conclude that the informant is not an anonymous informant whose tip requires independent corroboration. Further, the fact that Baumgardner called the informant a "confidential informant"—alone—is insufficient to show that the person from whom the PPD received its information is a known informant who comes from the criminal world and whose reliability and veracity Baumgardner was required to vouch for or whose tip the PPD was required to verify through independent police work.

{¶ 35} Instead, the totality of the circumstances shows that the informant was a citizen informant who witnessed Long engaging in criminal activity, which he reported to the PPD. As a citizen informant, the neighbor is presumed to be credible and reliable,

16.

and Baumgardner was not required to aver to the neighbor's veracity or reliability or to independently verify the information the neighbor reported to the PPD.

## 2. The informant's report to the PPD was sufficient to support probable cause.

{¶ 36} Based on our determination that the person who reported Long to the PPD was, in fact, a concerned citizen whose report was reliable, we further find that the totality of the circumstances shows that the municipal court judge had a substantial basis for concluding that probable cause to search Long's home existed.

{¶ 37} As noted above, "questions of veracity and reliability are essentially obviated * * *" when the information about a crime comes from a citizen eyewitness, *McCrory*, 6th Dist. Wood Nos. WD-09-074 and WD-09-090, 2011-Ohio-546, at ¶ 21, and an eyewitness's account "supplies a basis for a finding of probable cause in compliance with *Gates*." *Garner*, 74 Ohio St.3d at 63, 656 N.E.2d 623. In our view, the information from Long's neighbor—i.e., a report to the PPD that the neighbor saw Long (who appeared to be masturbating) sitting in front of a computer screen watching what appeared to be videos of girls who were no older than ten engaged in sexual acts— provided the municipal court judge with probable cause to issue the search warrant. That is, the neighbor's presumptively reliable report was more than sufficient to support a finding that there was a fair probability that evidence of a crime would be found in Long's home. *Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, at ¶ 35. On this basis alone, we find that the trial court did not err in denying Long's motions to suppress.

17.

### C. We need not address the curtilage issues.

{¶ 38} Long's other arguments center on whether McGuffin was lawfully on the curtilage of his property at the time McGuffin observed him viewing a video of children engaged in sex acts. We need not address these arguments, however, because the information provided by Long's neighbor was sufficient to support the municipal court judge's finding of probable cause to search Long's home. That is, even if we assume that McGuffin's actions were unconstitutional and we excise all information in Baumgardner's affidavit that came from McGuffin's own observations while standing on Long's driveway, the neighbor's information nonetheless provided probable cause for the search. *See State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 17, quoting *United States v. Karo*, 468 U.S. 705, 719, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) (when an affidavit for a search warrant contains information that the police obtained improperly or unconstitutionally, courts will uphold the warrant if "after excising tainted information from a supporting affidavit, '[]sufficient untainted evidence was presented in the warrant affidavit to establish probable cause * * *.'").

{¶ 39} Long's assignment of error is not well-taken.

### III. Conclusion

{¶ 40} Based on the foregoing, the March 8, 2019 judgments of the Wood County Court of Common Pleas are affirmed. Long is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgments affirmed.

18.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Christine E. Mayle, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.