[Cite as *State v. Deeble*, 2024-Ohio-5418.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No.  L-23-1275

        Appellee                            Trial Court No.  CR0202301228

v.

Randal Deeble                              **DECISION AND JUDGMENT**

        Appellant                            Decided:  November 15, 2024

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lorrie J. Rendle, Assistant Prosecuting Attorney, for appellee.

Autumn D. Adams, for appellant.

* * * * *

**MAYLE, J.**

**{¶ 1}** Appellant, Randal Deeble, appeals the October 18, 2023 judgment of the

Lucas County Court of Common Pleas sentencing him for convictions of trafficking in

cocaine and aggravated possession of drugs.  For the following reasons, we affirm.

**I. Background and Facts**

**{¶ 2}** Deeble was indicted on one count each of trafficking in cocaine in violation

of R.C. 2925.03(A)(2) and (C)(4)(d), a second-degree felony; possession of cocaine in

violation of R.C. 2925.11(A) and (C)(4)(c), a third-degree felony; aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(1)(d), a first-degree felony; aggravated possession of drugs in violation of R.C. 2925.11(A) and (C)(1)(c), a second-degree felony; and aggravated possession of drugs in violation of R.C. 2925.11(A) and (C)(1)(a), a fifth-degree felony.

{¶ 3} Deeble's arrest resulted from a search of his apartment on Reynolds Road, its detached garage, and his white Ram Promaster van. On November 22, 2022, detective Michael Mugler of the Toledo Police Department sought a warrant to search the apartment and van for, among other things, cocaine or other illegal narcotics; tools, equipment, or weapons used to manufacture, process, store, or sell drugs; financial records, drug transaction records, cellphones, or computers; and documents or utility records showing ownership or occupancy of the property.

{¶ 4} In the affidavit attached to the search warrant, Mugler averred, based on his "personal observations, [his] training, education, experience and information obtained from other detectives and witnesses[,]" that he had probable cause to believe that Deeble owned or occupied the apartment on Reynolds Road and the white Ram van and was concealing cocaine and other illegal narcotics in them. Mugler also obtained information from a "very reliable confidential source . . ." who had "assisted [him] in criminal investigations . . . [,]" provided information that "led to the seizure of narcotics and materials consistent with drug trafficking[,]" and provided information that other

2.

confidential sources, officers, and databases "independently verified as creditable [sic] and accurate . . . ."

{¶ 5} To support his probable cause to search, Mugler said that he began investigating Deeble around November 1, 2022, had received information about Deeble "for a month[,]" and had learned that Deeble is a drug trafficker based in Toledo who uses his white Ram van to make drug deals throughout the city. He had also identified the Reynolds Road address as "a location used by Randal Deeble . . . to traffic narcotics . . . ."

{¶ 6} Mugler's source told him that Deeble used the white Ram van to traffic illegal narcotics throughout the city, that he kept illegal narcotics in the van and on his person, and that "narcotics are being made and hidden inside . . ." the Reynolds Road apartment.

{¶ 7} On November 20, Mugler's source said that they could buy cocaine from Deeble, and officers set up a controlled buy between the source and Deeble. The source was searched for money and contraband, given TPD money to buy the cocaine, and observed by officers until the source reached the agreed meeting location in a parking lot. Soon after the source got to the parking lot, Deeble drove into the parking lot in the white Ram van, got out of the van, went to the source's vehicle, and was observed by another TPD officer "conducting, what appeared in [the officer's] training, education, and experience, to be hand to hand drug transaction . . . ." After that, the source returned directly to Mugler and gave him a substance that field-tested positive for the presence of

3.

cocaine. The source confirmed that they purchased the cocaine from Deeble, who was driving the white Ram van, at the agreed upon parking lot.

{¶ 8} The next day, Mugler surveilled the Reynolds Road apartment. He saw Deeble get in the white Ram van, "leave the location and return a short time after on several occasions. Based on [Mugler's] training, education, and experience, this activity is indicative of drug trafficking." Mugler also saw Deeble "going in and out of" the detached garage, the back door, and the front door.

{¶ 9} In addition to the November 2022 information, Mugler included an incident from July 7, 2022, when TPD officers responded to a possible burglary at the Reynolds Road address. When officers got to the apartment, they saw Deeble, who matched the suspect's description, standing outside. When officers tried to stop Deeble, he ran inside the apartment. The officers called for negotiators, who eventually made contact with Deeble, gained entry to the apartment, and detained Deeble and two others. Deeble told officers that he lived there and was able to produce a key. Officers found a "[s]tolen firearm, a bag of ammunition and three bags of suspected drugs . . ." inside the apartment. Mugler noted that Deeble had "several convictions" that disqualify him from possessing a firearm, none of which was a drug conviction.

{¶ 10} Regarding his own experience, Mugler said that he had been in law enforcement for over six years and included a page (that appears to be boilerplate language) in which he averred, among other things, that drug traffickers commonly

4.

conduct their business from multiple locations; store drugs, proceeds, and records at their residence; and "conceal . . . caches of drugs . . ." in their residence.

{¶ 11} Based on Mugler's affidavit, a common pleas court judge granted the warrant on November 22. When officers searched Deeble's home on November 23, they recovered one bag of "white powder," one "large bag of powder," one "large bag of crack," some white pills, three scales with "residue," some "white hard substance," a tray with some unspecified amount of marijuana on it, $401 in cash, baggies and scales without residue, three cellphones, and two bullets. The warrant return does not indicate that officers seized anything from Deeble's van. Testing ultimately revealed that the pills the police seized were acetaminophen and the other substances contained a total of 22.6 grams of methamphetamine, 13.78 grams of cocaine, and .24 grams of crack cocaine.

{¶ 12} Deeble filed a motion to suppress all evidence the police obtained from searching his apartment. He argued that Mugler's affidavit was "devoid of any information that would establish probable cause" because the only information indicating that he might have illegal drugs in the apartment was stale and nothing else in the affidavit showed that anything illegal was stored in the apartment.

{¶ 13} Due to the "perishable nature" of the evidence the police were looking for, Deeble argued that anything officers saw at the Reynolds Road apartment in July 2022 was unlikely to be there in November 2022, so the information related to the July incident was stale and could not form the basis of probable cause to search his house in November. He also claimed that there was "no additional information" in the affidavit

5.

indicating that illegal drugs were ever stored at the Reynolds Road apartment. Deeble pointed out that Mugler did not claim that any drug deals took place at the Reynolds Road apartment, Deeble took "contraband" from the house to the controlled buy in a parking lot, or officers followed Deeble from his house to the controlled buy.

{¶ 14} In its response, the state argued that the totality of the circumstances showed that the issuing judge correctly determined that Mugler's affidavit demonstrated probable cause to search Deeble's apartment. It claimed that information in the affidavit was not stale because Mugler obtained and executed the warrant within days of the controlled buy and conducting surveillance. Additionally, the new, "fresh" information corroborating the information from July refreshed the July information and eliminated any concerns about it being stale, and the July information provided important background information for the reviewing judge. The state also pointed out that Mugler's source specifically said that Deeble was "making and hiding narcotics inside . . ." his home, and that Mugler saw Deeble "come and go for short periods multiple times a day . . ." while surveilling the apartment, which Mugler knew from his training and experience was indicative of drug trafficking. The state also claimed that the affidavit "mentioned that four months earlier, narcotics were found inside the premises" and pointed to the boilerplate language regarding the common practice of drug traffickers "us[ing] their homes to hide contraband, including narcotics . . . ." Further, the state argued that the good-faith exception would apply to save the search even if the issuing judge did not have a substantial basis for finding probable cause.

6.

{¶ 15} At the suppression hearing, Deeble's attorney expanded upon the issues he had raised regarding Mugler's affidavit. First, he reiterated that the police investigation of Deeble began in November 2022, but the warrant included information from July 2022, which was stale by the time the issuing judge reviewed the affidavit, and Mugler should have known that "if the drugs are there, they're not just going to sit for four months if [Deeble] is using or selling them . . . ." Next, counsel emphasized that there was no evidence that Deeble conducted any "illegal transactions" from his apartment and said that the only connection between the drugs Deeble was allegedly selling and his home was "information that the drugs may be stored . . ." there and Mugler's statement in the affidavit that "based upon his experience . . . they must store the drugs at their home." He went on to argue that the fact that Deeble had drugs in his van had "nothing to do with [his] residence, . . ." which is "where the contraband [wa]s found." He also noted that officers did not follow Deeble from his house to the controlled buy. Finally, counsel pointed out that nothing in the affidavit indicated that Mugler's source "was ever at [Deeble's] house, that he ever saw anything in [Deeble's] house, [or] that he ever saw anybody deliver anything to [Deeble's] house[,]" and that Deeble walking from his house to his garage "a couple of times" was innocuous.

{¶ 16} In short, Deeble believed that the only things supporting probable cause to search his house were "conjecture, [and] that magic statement that's attached to every search warrant . . . where there's a discussion about that based upon our experience and all those other things." However, counsel believed that "the experience of what normally

7.

or can sometimes happen isn't enough to get you to the probable cause to go ahead and search [Deeble's] house[,]" and the information in the affidavit simply "doesn't say anything about the house, about him doing anything in the house, about storing anything in the house or anything like that." Counsel also claimed that the good-faith exception did not apply because "the person who is asking for the good faith[, i.e., Mugler,] is the person who put together the Affidavit, and the Affidavit is insufficient."

{¶ 17} In response, the state first conceded that the claim in the affidavit that Deeble "previously had narcotics in his home . . ." in July 2022 was stale, but stale information could be refreshed by new facts, and the totality of the circumstances showed that there was probable cause to search Deeble's apartment for drugs. It pointed to the facts from July, Mugler's source saying that they were "aware of [Deeble] selling narcotics out of [his] vehicle and out of his home . . .[,]" the source's controlled buy from Deeble, Mugler's observation of Deeble "coming in and out of his house and going into his car, . . ." which his training and experience told him was "indicative of drug trafficking[,]" and his knowledge from his training and experience that drug traffickers keep narcotics in their homes. When all of these facts were considered together, the state believed that the issuing judge had a substantial basis for concluding that probable cause to search Deeble's house existed.

{¶ 18} Regarding the good-faith exception, the state argued that the officers who searched Deeble's home "did not have any indication that the search warrant would have

8.

been bad, [and] they relied on that search warrant in good faith, . . ." so there was no reason to exclude the evidence even if the warrant was ultimately invalid.

{¶ 19} After hearing the parties' arguments, the court denied Deeble's motion to suppress from the bench. Based on the four corners of the search warrant, the court determined that the issuing judge had a substantial basis for concluding that probable cause existed to search Deeble's apartment. The court found that the information in the affidavit was not stale because the warrant was executed one day after Mugler's surveillance, two days after the source's controlled buy, and 23 days after the investigation into Deeble began. The affidavit also included "specific" information about "the residence where [Deeble] kept his inventory" from a source Mugler described as "very reliable." The court concluded that Deeble "does not get a free pass on probable cause because he utilized his motor vehicle and drove throughout the city offering free delivery on these illegal narcotics. He had to keep his inventory somewhere safe and the nexus to his residence was established."

{¶ 20} After the court denied his motion to suppress, Deeble pleaded no contest to the trafficking in cocaine and second-degree-felony aggravated possession of drugs charges. The trial court found him guilty and sentenced him to a minimum stated prison term of four years and a maximum term of six years.

{¶ 21} Deeble now appeals, raising one assignment of error:

The search warrant was improperly granted because the supporting affidavit did not have a substantial basis for determining the existence of

9.

probable cause to search Appellant's residence as the affidavit included not only stale information but information that was not directly tied to criminal activity.

## II. Law and Analysis

**{¶ 22}** In his assignment of error, Deeble argues that the trial court erred by denying his motion to suppress because Mugler failed to provide sufficient information about his source to allow the issuing judge to rely on the source's information, and the affidavit supporting the warrant included stale and noncriminal information, which resulted in the issuing judge lacking a substantial basis for finding probable cause to search Deeble's apartment.

**{¶ 23}** The state responds that (1) Mugler attested to the source's reliability and corroborated the source's information by setting up the controlled buy, which lends credibility to the source's claim that Deeble manufactured and stored narcotics in his home; (2) the old information in the warrant was not stale, so the issuing judge properly considered it; and (3) Deeble's arguments misinterpret our case law regarding the information required in a warrant affidavit. Although the state contends that the issuing judge had a substantial basis to find probable cause to search Deeble's apartment, if we find that the warrant was defective, it argues that the good-faith exception should apply to prevent the exclusion of the evidence found at Deeble's apartment.

10.

## A. Standard of review

{¶ 24} Our review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. The trial court acts as the trier of fact at a suppression hearing by weighing the evidence and determining the credibility of the witnesses. *Id.* We must accept the trial court's factual findings if they are supported by competent credible evidence, and "'independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.'" *State v. Wesson*, 2013-Ohio-4575, ¶ 40, quoting *id.*

{¶ 25} The Fourth Amendment to the United States Constitution and Article I, Section 14, of the Ohio Constitution prohibit unreasonable searches and seizures of persons or property. Central to those prohibitions is the requirement that search warrants issue based on probable cause. *State v. Castagnola*, 2015-Ohio-1565, ¶ 34. In this context, "probable cause" means that the evidence presented in support of issuing the search warrant is sufficient for the judge to conclude that there is a fair probability that evidence of a crime will be found in a particular place. *Id.* at ¶ 35.

{¶ 26} A reviewing court does not conduct a de novo review of the issuing judge's probable-cause determination. *State v. George*, 45 Ohio St.3d 325, 330 (1989). Instead, we must ensure that the judge had a substantial basis, considering the totality of the circumstances, for concluding that probable cause existed. *Castagnola* at ¶ 35, citing *George* at 329; *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983); and *Jones v. United States*, 362 U.S. 257, 271 (1960). An issuing judge's probable cause determination is

11.

entitled to "great deference," even if it is doubtful or marginal. *State v. Williams*, 2007-Ohio-4472, ¶ 13 (6th Dist.), citing *George* at 330.

{¶ 27} A judge may issue a search warrant based solely on facts presented by affidavit, as the issuing judge did in this case. Crim.R. 41(C)(1). If the warrant is based only on information provided by affidavit, review of the issuing judge's probable cause determination—both at the trial and appellate court levels—is limited to the information found within the four corners of the affidavit. *State v. Long*, 2020-Ohio-4090, ¶ 22 (6th Dist.), citing *Castagnola* at ¶ 39.

**B. The issuing judge had a substantial basis for finding probable cause.**

{¶ 28} Here, Deeble's complaints about the warrant focus on Mugler's failure to provide sufficient information about his source to allow the issuing judge to rely on the source's information and lack of information to link narcotics to his apartment. We address each issue in turn.

**1. The affidavit contained sufficient information about Mugler's source.**

{¶ 29} First, we find that Deeble's complaints about Mugler's source are unfounded. The source was a "known informant," someone who is part of the criminal world and whose information is considered inherently more suspect that information provided by a citizen who witnesses criminal activity. *Long* at ¶ 24-26, citing *Maumee v. Weisner*, 87 Ohio St.3d 295, 300 (1999). Because a known informant's evidence is considered more suspect, "a probable-cause finding based on a known informant's tip requires that the affiant either attest to the informant's reliability, veracity, and basis of

12.

knowledge *or* corroborate the informant's tip through independent police work." (Emphasis in original.) *Id.* at ¶ 26. Although an informant's classification is relevant to their reliability, courts cannot perform a "conclusory analysis based solely upon . . ." the classification. *Weisner* at 300. Instead, the court must review all the information in light of the totality of the circumstances. *Id.* However, "a known informant's word cannot be the sole basis for a finding of probable cause." *Long* at ¶ 26.

{¶ 30} Here, Mugler attested to his source's veracity and reliability, but did not include any information about the source's basis of knowledge. In other words, he said that the source was "[v]ery reliable[,]" had provided information that led to the seizure of narcotics and "materials consistent with drug trafficking[,]" and had provided other information that was independently verifiable, but did not say anything about *how* the source learned that Deeble was keeping narcotics on his person and in his van and making and storing narcotics in his apartment. This is not necessarily fatal to a probable cause finding, however, because "the correct inquiry for the issuing judge is not whether the affidavit includes reference to the informant's basis of knowledge, veracity, or reliability." *State v. Rieves*, 2018-Ohio-955, ¶ 27 (8th Dist.). Instead, this is part of the totality of the circumstances that the issuing judge is required to consider. *Id.*

{¶ 31} Regardless, without information about the basis of the source's knowledge, some corroborating police investigation was required to support the source's tip. *Long*, 2020-Ohio-4090, at ¶ 26 (6th Dist.). The source told Mugler that they could purchase cocaine from Deeble, which officers corroborated with the controlled buy. The buy

13.

specifically corroborated the part of the source's tip about Deeble keeping drugs with him and in his van and overall increased the reliability of the tip, as corroboration "'lends credence to the remaining unverified portion of the informant's story by demonstrating that the informant has, to the extent tested, spoken truthfully.'" *State v. Williams*, 2023-Ohio-4344, ¶ 37 (6th Dist.), quoting *State v. Ralston*, 2011-Ohio-3552, ¶ 14 (4th Dist.). Under our highly deferential standard of review, it also created a sufficient—if weak—nexus between Deeble's apartment and his alleged criminal activity.

**2. The affidavit demonstrated a nexus between Deeble's apartment and his criminal activities.**

{¶ 32} Next, we find that Mugler's affidavit connected Deeble's apartment to his criminal activity. Among other things, probable cause for a search warrant requires some "nexus between the alleged crime, the objects to be seized, and the place to be searched." *Castagnola*, 2015-Ohio-1565, at ¶ 34. For a nexus to exist, the circumstances must indicate *why* certain evidence of illegal activity will be found in a particular place. *State v. Young*, 2019-Ohio-4639, ¶ 18 (10th Dist.), citing *State v. Phillips*, 2016-Ohio-5944, ¶ 14 (10th Dist.); *United States v. Washington*, 380 F.3d 236, 240 (6th Cir. 2004); and *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004).

{¶ 33} In a drug case, a nexus requires some reliable evidence connecting drug activity to the alleged dealer's residence, such as drug transactions happening at the residence or the suspect going to and from the residence in close temporal proximity to a drug transaction. *See Phillips* at ¶ 21-24, citing *United States v. Gunter,* 266 Fed.Appx. 415, 419 (6th Cir. 2008); and *United States v. Brown*, 828 F.3d 375 (6th Cir. 2016);

14.

*Williams* at ¶ 30-33. But if the only evidence to make that connection is unreliable, like uncorroborated statements by a confidential informant, then a warrant cannot issue. *Phillips* at ¶ 14. This is true even when the affiant describes their knowledge, training, and experience, and attests that they believe, based on that knowledge, training, and experience, that evidence of a crime will be in the house. *See id.* at ¶ 15-16, 23-24, citing *United States v. Schultz,* 14 F.3d 1093 (6th Cir. 1994); and *Brown.* In other words, "a reasonable belief, without some evidentiary support linking the [location] to [the suspect's] drug activities, is not enough for a search warrant." *State v. Perez*, 2015-Ohio-1753, ¶ 19 (2d Dist.). *But see State v. Reece*, 2017-Ohio-8789, ¶ 21 (3d Dist.), citing *State v. Myers*, 2015-Ohio-2135, ¶ 13 (9th Dist.) ("Evidence of drug trafficking, without more, furnishes probable cause to search [the suspect's] residence because drug traffickers often keep evidence of their illicit activities in their residences.").

{¶ 34} Overall, the information in Mugler's affidavit fails to explain why evidence of drug trafficking will be found in Deeble's apartment. Mugler's reliable source did not provide any information about how they knew that police would likely find drugs inside Deeble's apartment, and the officers' corroborative investigation did not link any drug activity to the apartment. Evidence of either would have sufficed to tie the apartment to Deeble's illegal activities. *See Williams* at ¶ 42 (affidavit established nexus between defendant's drug activities and his addresses by showing that appellant engaged in hand-to-hand transaction in front of one address before going inside and twice drove between the first and second addresses during or after suspected drug transactions); *Gunter* at 419

15.

(affidavit established nexus between defendant's drug activities and his residence when law enforcement agents observed defendant "visiting his residence right before he traveled to the site of a drug sale" and the affiant outlined "significant experience in narcotics investigations . . ."); *compare Brown* at 382-383 (although defendant's car was registered and parked at his address, and a drug dog alerted to the car, the affidavit did not establish a nexus to the residence because it did not contain evidence that anyone purchased drugs there, officers observed drug activity there, or recorded phone calls alluded to drug activity there). Mugler's surveillance of the apartment the day after the controlled buy does not show a nexus to the apartment, either. Mugler watched Deeble leave his apartment and "return a short time after on several occasions[,]" which Mugler's training and experience led him to believe was indicative of drug trafficking. But an officer's training and experience—without evidence to back it up—does not create the nexus necessary for probable cause to search. *Phillips* at ¶ 14-15.

{¶ 35} However, the fact that officers were able to corroborate part of the source's tip with the controlled buy made the rest of the tip more believable and moved the uncorroborated information from unreliable to reliable. *See Long*, 2020-Ohio-4090, at ¶ 26 (6th Dist.), citing *State v. Nunez*, 2008-Ohio-6806, ¶ 19-20 (6th Dist.). That is, after the controlled buy, the source's word was no longer "the sole basis for a finding of probable cause." *Id.* While the better practice would be including information about the source's basis of knowledge or corroborating the source's tip in a way that showed a direct connection between Deeble's apartment and the controlled buy, we are not

16.

conducting a de novo review of probable cause. *See George*, 45 Ohio St.3d at 330. And, giving great deference to the issuing judge, we find that there was a nexus between Deeble's apartment and his illegal activities.

{¶ 36} Deeble argues that the nexus to his apartment is lacking because the information in the affidavit from July 2022 was stale and should have been disregarded. He also points out that officers found "suspected" narcotics in his apartment in July, but nothing in the affidavit indicates that he had *actual* narcotics in his apartment. Deeble is correct that probable cause must exist at the time an officer applies for a warrant. *State v. Morales*, 2018-Ohio-3687, ¶ 19 (10th Dist.). As a result, "[t]he more 'stale' the evidence becomes, the less likely it is to support probable cause." (Internal quotation omitted.) *State v. Ridgeway*, 2001 WL 1710397 (4th Dist. Nov. 21, 2001). But, in this case, whether the July evidence was stale does not matter because the other evidence in the affidavit provided the issuing judge a substantial basis for finding probable cause—i.e., the warrant would have issued with or without the July incident included.

{¶ 37} In sum, when Mugler's affidavit is viewed as a whole, we find that the issuing judge had a substantial basis, considering the totality of the circumstances, for concluding that probable cause existed. Therefore, Deeble's assignment of error is not well-taken.

17.

## III. Conclusion

**{¶ 38}** Based on the foregoing, the October 18, 2023 judgment of the Lucas County Court of Common Pleas is affirmed. Deeble is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J. _____
                               JUDGE

Christine E. Mayle, J.

Myron C. Duhart, J. _____
CONCUR.                                JUDGE

_____
                               JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.