[Cite as *State v. Siegel*, 2021-Ohio-4208.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 20CA17 |
| | : | |
| v. | : | |
| | : | DECISION AND |
| STEVEN A. SIEGEL, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

James A. Anzelmo, Anzelmo Law, Gahanna, Ohio, for Appellant.

Nicole T. Coil, Washington County Prosecuting Attorney, Marietta, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} This is an appeal from a Washington County Common Pleas Court judgment entry convicting Appellant, Steven A. Siegel, of one count of having weapons while under disability, a third-degree felony in violation of R.C. 2923.13(A)(3) and sentencing him to a jointly recommended sentence of 24 months in prison. On appeal, Siegel raises seven assignments of error, contending: 1) that the trial court erred by denying his motion to suppress evidence that police obtained in violation of his state and federal constitutional rights; 2) that his conviction is based on insufficient evidence; 3) that his conviction is against the

manifest weight of the evidence; 4) that the prosecutor committed misconduct by intimidating his witness into not testifying; 5) that the trial court erred by admitting into evidence his prior bad acts; 6) that the trial court abused its discretion by admitting into evidence an unauthenticated social media post; and 7) that he received ineffective assistance of counsel.

{¶2} Because we have found that the search warrant affidavit that was filed in support of the search warrant for Siegel's residence did not establish sufficient probable cause for the warrant to be issued, and because we have further found that a well-trained officer would have known that the search and seizure of the residence was illegal because the search warrant affidavit supporting the search failed to address the issue of the reliability and veracity of the informant, we conclude the trial court erred in denying Siegel's motion to suppress evidence. Thus, because evidence seized pursuant to the search warrant should have been suppressed, Siegel's first assignment of error is sustained. Accordingly, the judgment of the Washington County Court of Common Pleas is reversed and the matter is remanded for further proceedings consistent with this opinion. Further, because our disposition of Siegel's first assignment of error is dispositive of this matter, his remaining assignments of error have been rendered moot and we need not address them.

FACTS

{¶3} The following facts are pertinent to this appeal. Steven Siegel was charged with having a weapon while under disability, a third-degree felony in violation R.C. 2923.13(A)(3), after a firearm was found in his home in connection with the execution of a search warrant. Siegel pleaded not guilty to the charge and proceeded with the filing of a motion to suppress all evidence obtained from the search that was executed pursuant to the warrant. In his motion, he argued that there was no probable cause demonstrated to support the issuance of the search warrant. More specifically, he argued that although law enforcement relied upon a tip from an informant, the informant's reliability was never established, nor was the tip independently corroborated by law enforcement. Thus, he argued that because the affidavit filed in support of the search warrant was legally insufficient, the search warrant was invalid, and all evidence obtained from the warrant should be suppressed. Siegel further argued the good faith exception to the exclusionary rule did not apply.

{¶4} Seigel attached a copy of the search warrant as well as a copy of the affidavit that was filed in support of the search warrant to his motion. At the suppression hearing, the parties argued the motion based upon the four corners of the affidavit and did not introduce any other evidence or witnesses. The affidavit filed in support of the search warrant was prepared by Sergeant Eric Augenstein, of

the Washington County Sheriff's Office, on April 6, 2018. Although the contents of the affidavit will be discussed more fully below, the affidavit essentially referenced a tip by a known informant, Christopher Masten. Masten had been arrested the previous day as a result of an investigation by the Parkersburg Narcotics Task Force into the drug overdose death of an individual in Wood County, West Virginia. Masten advised Agent McClung, with the task force, that he regularly purchased heroin and meth from Siegel and that the heroin he had supplied to the overdose victim had been purchased from Siegel. Masten advised McClung that Siegel resided at #1, 8th Street in Belpre, Ohio, and that Siegel drove both a red car and a gray SUV. Masten also told McClung that he had seen "a pound of methamphetamine at Siegel's residence in the past as well as a couple ounces of heroin."[1]

{¶5} Agent McClung contacted Sergeant Augenstein with this information. As a result, Augenstein obtained a criminal history on Siegel, which included a drug-related conviction from 2010 and an arrest for "delivery of a controlled substance/drugs" that had not been disposed of and "appear[ed]" to be pending. Augenstein then verified Siegel's address by checking his Ohio Law Enforcement Gateway (OHLEG) profile and prior "calls for service" with the Belpre Police

---

[1]The warrant also explained that the Parkersburg Narcotics Task Force was "able to work the case back to the supplier[,] which was Masten, and then the task force was "able to arrange a controlled buy on Masten and arrested him during the buy." It was at that point that Masten provided the task force with the information regarding Siegel.

Department.  Augenstein also drove by the residence and observed a maroon Hyundai parked out front, which he verified was registered in Siegel's name.[2]

{¶6} "Based upon his criminal history and the statement given by Masten," Augenstein averred that "agents will likely find drugs and drug paraphernalia in the home at any given time."  A search warrant for Siegel's residence was thereafter issued and was executed by Sergeant Augenstein and other officers.  It appears that a firearm was found during the search of the residence, which Siegel claimed did not belong to him, but had been left there by a friend the night before.  However, because Siegel had a prior felony conviction, he was charged with having a weapon while under disability.

{¶7} The trial court ultimately denied Siegel's motion to suppress, explaining on the record during the hearing as follows:

> I'm going to note in this case * * * we're not dealing with a confidential informant where they have to establish reliability. In this case, we have a known and named informant.  We also know the named informant is involved in drug trafficking activity.  They actually caught Mr. Masten selling and buying drugs. They were working their way upside the food chain. They were able to confirm several things he said as far as address, vehicle, things of that nature.  Also, maybe more importantly than anything, they also were able to confirm his CCH, that showed a conviction for drug manufacturing or delivery of

---

[2]Although the State's brief contends that while conducting surveillance of the residence, law enforcement observed Siegel and his girlfriend exit the residence and leave in the vehicle that had been identified by the informant as belonging to Siegel, that testimony was not introduced until the jury trial of the matter.  There was no evidence introduced during the suppression hearing or contained in the affidavit in support of the search warrant indicating that law enforcement had observed Siegel either entering or exiting the residence at issue while conducting surveillance.

narcotics, where he received a one to fifteen sentence in prison. And it looks like he was just not too recently discharged from supervision in 2017. So not only were they able to get the other information; was able to confirm he was somebody who was involved in drug manufacturing or delivery. So, the Court's going to have no problem finding there was probable cause to exist for the search warrant, finds the affidavit is sufficient. Therefore, I am going to deny the motion to suppress.

{¶8} Once the motion to suppress was denied, the matter proceeded to a jury trial and Seigel was convicted of the sole count of having a weapon while under disability, as charged in the indictment. It is from this conviction that Seigel now brings his timely appeal, setting forth seven assignments of error for our review.

## ASSIGNMENTS OF ERROR

I.    THE TRIAL COURT ERRED IN DENYING SEIGEL'S MOTION TO SUPPRESS EVIDENCE THAT POLICE OBTAINED IN VIOLATION OF HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS.

II.   SEIGEL'S CONVICTION IS BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

III.  SEIGEL'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

IV.    THE PROSECUTOR COMMITTED MISCONDUCT BY INTIMIDATING SIEGEL'S WITNESS INTO NOT TESTIFYING, IN VIOLATION OF SIEGEL'S RIGHT TO A FAIR TRIAL GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

V.     THE TRIAL COURT ERED BY ADMITTING INTO EVIDENCE PRIOR BAD ACTS OF SIEGEL, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION SIXTEEN, ARTICLE ONE OF THE OHIO CONSTITUTION.

VI.    THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING INTO EVIDENCE AN UNAUTHENTICATED SOCIAL MEDIA POST, IN VIOLATION OF SIEGEL'S RIGHTS TO A FAIR TRIAL AND DUE PROCESS GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTUTITION AND SECTIONS 1, 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

VII.   SIEGEL RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

ASSIGNMENT OF ERROR I

{¶9} In his first assignment of error, Siegel contends that the trial court erred in denying his motion to suppress. More specifically, Siegel contends that because police relied upon information provided by a known informant who was part of the criminal milieu, they were required to either attest to the informant's reliability,

veracity, and basis of knowledge, or corroborate the informant's tip through independent police work. Siegel argues, however, that police neither investigated the informant, nor performed an independent investigation. Thus, Siegel contends that there was no probable cause to support the warrant and because there was no probable cause to support the warrant, the good faith exception to the exclusionary rule does not apply and the evidence obtained from the search warrant must be suppressed. The good faith exception to the exclusionary rule will be discussed below.

{¶10} The State contends that because law enforcement verified that Siegel lived at the apartment and drove the vehicle which the informant identified, and because law enforcement conducted surveillance of the apartment and saw Siegel leaving the premises, there was independent confirmation of the information provided by the informant.[3] The State further argues that "[l]aw enforcement confirmed what they could from the information provided by the informant[,]" and that such action "constitute[d] independent investigation and corroboration on the part of law enforcement prior to executing the search warrant." Thus, the State argues that the issuance of the search warrant should be upheld. The State alternatively argues that, should this Court find that the search warrant was not

---

[3]Again, although there was testimony introduced at trial that law enforcement observed Seigel leaving the residence while they were conducting surveillance, no such allegation was contained in the affidavit that was filed support of the search warrant.

supported by probable cause, the evidence obtained from the search warrant should not have been excluded based upon the good faith exception to the exclusionary rule.

## Standard of Review

{¶11} The standard of review of a decision addressing a motion to suppress presents a mixed question of law and fact. *State v. Ralston*, 4th Dist. Highland No. 16CA9, 2017-Ohio-7057, ¶ 6. On review, we must accept the trial court's determination of factual issues and evaluation of credibility of witnesses if supported by competent, credible evidence. *Id.* However, accepting those facts as true, we have a duty to conduct a de novo review of "whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, 975 N.E.2d 965, ¶ 6. *See also State v. Klosterman*, 114 Ohio App.3d 327, 333, 683 N.E.2d 100 (2d Dist.1996).

## The Fourth Amendment

{¶12} " 'The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures.' " *State v. Taylor*, 4th Dist. Lawrence No. 15CA12, 2016-Ohio-2781, ¶ 31, quoting *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. "The constitutional provisions contain nearly identical language and have been interpreted to afford the same protection." *Taylor* at ¶ 31, citing *State v.*

*Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 11.  This

constitutional guarantee is protected by the exclusionary rule, which mandates that

evidence obtained from an unreasonable search and seizure be excluded from trial.

*See Emerson* at ¶ 15.

Search Warrants and Probable Cause

{¶13} This Court has described the following standards related to the

necessity of probable cause for the issuance of search warrants as follows:

> A neutral and detached magistrate may issue a search warrant
> only upon the finding of probable cause.  *United States v. Leon*
> (1984), 468 U.S. 897, 914-915, 104 S.Ct. 3405, 82 L.Ed.2d 677;
> Crim.R. 41(C).  In determining whether to issue a search warrant,
> an issuing magistrate must scrutinize the affidavit in support of
> the warrant and make a practical, common sense decision, in
> light of all the circumstances set forth in the affidavit, including
> the veracity and basis of knowledge of persons supplying
> information, whether " 'there is a fair probability that contraband
> or evidence of a crime will be found in a particular place.' "  *State
> v. Gilbert*, 4th Dist. Scioto No. 06CA3055, 2007-Ohio-2717, ¶
> 13, citing *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640
> (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*,
> 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
>
> Probable cause requires the existence of circumstances that
> warrant suspicion.  *George* at 329.  The standard for probable
> cause requires a showing that a probability of criminal activity
> exists—not a prima facie showing of criminal activity.  *Id.*  When
> determining whether an affidavit in support of a search warrant
> sufficiently supports a finding of probable cause, a reviewing
> court must give great deference to the issuing magistrate's
> decision. *George* at paragraph two of the syllabus;  *Gates* at 237.
> Further, "[a]lthough in a particular case it may not be easy to

determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded warrants." *United States v. Ventresca*, 380 U.S. 102, 108, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Gates* at 237, fn. 10; *George* at paragraph two of the syllabus. Thus, "a reviewing court simply decides whether the affiant presented enough facts to allow the issuing magistrate or judge to independently determine the existence of probable cause." *Gates*, *supra*, at 239.

The United States Supreme Court has instructed judges who issue search warrants to consider the totality of the circumstances in determining whether probable cause exists to believe that evidence of a crime exists in a particular place. *Gates* at 238. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* The Supreme Court of Ohio adopted this holding. *See George, supra*, paragraph one of the syllabus. Therefore, both this court and the trial court must apply the same standard to review the municipal court judge's determination of probable cause, i.e., whether the affidavit provided a substantial basis for the municipal court judge to conclude that a fair probability exists that evidence of a crime would be found in the place to be searched. *Gates* at 238; *George* at 325, 544 N.E.2d 640, *see also, State v. Goddard*, 4th Dist. Washington No. 97CA23, 1998 WL 716662 (Oct. 2, 1998).

(Emphasis added.) *State v. Baker*, 4th Dist. Washington No. 16CA30, 2018-Ohio-762, ¶ 8-11.

{¶14} An assertion by an affiant that his or her informant was reliable alone is not enough to support a finding of probable cause. *See State v. Gill*, 49 Ohio St.2d 177, 360 N.E.2d 693 (1977). However, "[i]n reviewing the sufficiency of

probable cause in an affidavit, neither a trial court nor an appellate court should

'substitute [its] judgment for that of the issuing magistrate by conducting a de novo

determination' as to the existence of probable cause." *State v. Landis*, 12th Dist.

Butler No. CA2005-10-428, 2006-Ohio-3538, ¶ 15, quoting *State v. George*, *supra*,

at 330.

Classifications of Informants

{¶15} The Sixth District Court of Appeals recently explained the different

classifications of informants as follows:

> * * * a citizen informant, who has witnessed criminal activity
> and is presumed credible; a known informant, who is generally
> part of the "criminal milieu" and the affiant must attest to the
> informant's veracity, reliability, *or* basis of knowledge or must
> independently corroborate the information; and an anonymous
> informant, generally considered unreliable and requires
> independent police corroboration. [*State v.*] *Long*, 2020-Ohio-
> 4090, 157 N.E.3d 362, at ¶ 24-27 [(6th. Dist.)].

(Emphasis added.) *See State v. Connin*, 6th Dist. Fulton No. F-20-005, 2020-Ohio-

6867, ¶ 18.

{¶16} The *Connin* court also described another category of informant that is

less common, which is "the identified or first-time informant who implicates

another while admitting his own criminal activity." *Id.* at ¶ 19.

{¶17} Although *Connin* states, with respect to a known informant that is part

of the criminal milieu, that "the affiant must attest to the informant's veracity,

reliability, *or* basis of knowledge or must independently corroborate the

information[,]" the requirements are improperly stated in the disjunctive. (Emphasis added.) *Id.* at ¶ 18. Instead, the affiant must attest to the informant's veracity, reliability, *and* basis of knowledge, or must independently corroborate the information. *See State v. Kerns*, 4th Dist. Highland No. 15CA6, 2016-Ohio-63, ¶ 18 ("To determine whether the affidavit submitted in support of a search warrant established probable cause, a magistrate must make a practical, common sense decision based upon all the circumstances set forth in the affidavit, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, that there is a fair probability that contraband or evidence of a crime will be found in a particular place."), citing *State v. George, supra*, at paragraph one of the syllabus, quoting *Illinois v. Gates, supra*, at 238-239. *See also, State v. Jones*, 3d Dist. Marion No. 9-20-04, 2020-Ohio-6667, ¶ 28 (" '* * * a probable cause finding based on a known informant's tip requires that the affiant either attest to the informant's reliability, veracity, and basis of knowledge or corroborate the informant's tip through independent police work' "), quoting *State v. Long*, 6th Dist. Wood No. WD-19-021, 2020-Ohio-4090, ¶ 26, in turn citing *State Nunez*, 180 Ohio App.3d 189, 2008-Ohio-6806, ¶ 19-20 (6th Dist.).

{¶18} *Connin* stated that, in the case of an identified or first-time informant who implicates another while admitting his own criminal activity, "[t]he admission of the criminal activity acts to bolster the informant's credibility as a

statement against penal interest."  *Connin* at ¶ 19, citing *State v. Mendoza*, 2019-Ohio-3382, 142 N.E.3d 148 (10th Dist.) (holding that a first-time informant's tip "carried an indicia of credibility because he admitted to his own criminal activity" because he disclosed he had drugs and a weapon at his residence, which police were able to verify, and because he implicated himself in allegations made against Mendoza) and *State v. Oloff*, 2d Dist. Greene No. 2012-CA-34, 2012-Ohio-6048, ¶ 20.  In reaching its decision, the *Mendoza* court noted that the United States Supreme Court has stated that "an informant's admission of criminal activity *may* demonstrate the credibility of the informant's statements[.]" (Emphasis added). *Mendoza* at ¶ 15, citing *United States v. Harris*, 403 U.S. 573, 583-84, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (reasoning, in part, that "[p]eople do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions.  Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search").

{¶19} However, the *Mendoza* court also noted cases in other districts that refused to find probable cause in situations involving first-time informants that were involved in criminal activity, without either the informant's reliability being demonstrated or corroboration through independent police work.  *See State v. Dowler*, 9th Dist. Medina No. 10CA0093-M, 2011-Ohio-4991, ¶ 15 ("Based on the

fact that this was a confidential informant, who had not previously provided information, the basis of his acquired knowledge was unknown, and he indicated that he himself was involved in the criminal conduct, we conclude that he was not a reliable source of information."); *State v. Shepherd*, 122 Ohio App.3d 358, 366, 701 N.E.2d 778 (2d Dist.1997)( "In the case of a citizen-informant who is victimized or merely witnesses a crime and reports it out of a sense of civic duty, the police may be entitled to presume that the informer is reliable. * * * No such faith is extended to an informant who * * * was[] privy to information solely because he is himself implicated in criminal activity. * * * His information may be relied upon only if the totality of the circumstances demonstrates that he is reliable or his information concerning criminal conduct was corroborated through independent police work"). Thus, in our view, while an admission of criminal conduct by an identified or first-time, criminal informant *may* provide sufficient probable cause for the issuance of a search warrant, that determination is highly dependent on the unique facts of the case, and does not always lead to the conclusion that probable cause was established. *See generally State v. Poling*, 4th Dist. Hocking No. 91CA5, 1992 WL 38447, *2, (observing that "the ordinary citizen who has never before reported a crime to the police may, in fact, be more reliable that one who supplies information on a regular basis[,]" because " '[t]he latter is likely to be someone who is himself involved in criminal activity or is, at

least, someone who enjoys the confidence of criminals' "), quoting *State v. Harris*, *supra*, at 573.  Furthermore, as explained in *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 720 N.E.2d 507, "the United States Supreme Court discourages conclusory analysis based solely upon [the] categories * * *" of informants.

Legal Analysis

{¶20} In the case presently before us, a search warrant for Siegel's residence was issued by the Washington County Court of Common Pleas on April 6, 2018, upon the affidavit of Sgt. Eric Augenstein, from the Washington County Sheriff's Office, who was contacted by Agent McClung, from the Parkersburg (West Virginia) Narcotics Task Force, in reference to a drug overdose death that occurred in West Virginia.  McClung advised Augenstein that the task force had worked the case back to a supplier named Christopher Masten and that they had arrested Masten during a controlled buy.  Upon his arrest, Masten informed McClung that he had purchased heroin from Siegel in the last 2-3 days, that he had purchased 2 oz. of heroin from him the past week, that he purchases heroin and meth from Siegel 1-2 times a week, and that he had recently purchased larger amounts from him because he had come into some money.  Masten informed McClung that the deals are always set up via telephone call or text and that while he usually goes to Siegel's residence, sometimes Siegel brings the controlled substances to him.

{¶21} Masten told McClung that he had been dealing with Siegel for two years and that he purchases "ice" from him, which is methamphetamine. He advised he had seen a pound of methamphetamine, as well as a couple of ounces of heroin, at Siegel's house "in the past." He also told McClung that Seigel makes trips to Columbus to purchase his controlled substances, which he then brings to his house to sell locally. Masten told McClung that the heroin he had provided to the overdose victim was purchased from Seigel. Masten told McClung that Siegel lived on 8th Street in Belpre, Ohio, and he identified a Google Maps photo of the residence. Masten also told McClung that Siegel drives a "red car" and "gray SUV."

{¶22} In his affidavit, Sergeant Augenstein averred that, based upon this information, he obtained OHLEG and LEADS information from the CCH that showed Siegel's address as 114 Ellsworth Avenue, Marietta, Ohio, which was a different address than that provided by Masten, and that he had a 2004 Hyundai registered in his name that was "maroon in color." Augenstein drove by 8th Street in Belpre and observed "the Hyundai" sitting in front of the residence. He then contacted the Belpre Police Department and confirmed that there had been "calls for service" to the 8th Street address involving Siegel, including 2 prior domestic violence complaints (December 29, 2017, and December 30, 2017). One of the statements given in relation to one of the domestic violence calls was from a

woman named Michelle Cyrus, who stated that she and Siegel had been living at the address for four months. Augenstein then confirmed with the Washington County Jail that Seigel "listed his address as 1 ½ 8th Street in Belpre when he was booked in."

{¶23} Augenstein's affidavit also included information regarding Siegel's criminal history. He averred that the CCH included information indicating that Siegel had three prior convictions: one for shooting across a road within 500 feet of a dwelling in 2009; and two counts of drug manufacturing/delivery of narcotics in 2010. Augenstein also averred that Siegel's criminal history showed arrests for "weapons brandishing, domestic battery, delivery of a controlled substance/drugs, destruction of property, and counterfeit currency," which did not show dispositions, but "appear to be pending cases." Thus, the criminal history included a drug-related conviction from eight years prior, and a current drug-related arrest that appeared to be pending. However, there was no information about the underlying facts of the arrest, including the date of the arrest or where the matter was pending, or the underlying facts that formed the basis of the arrest. Finally, Augenstein averred that "[b]ased on his criminal history and the statement given by Masten, agents will likely find drugs and drug paraphernalia in the home at any given time."

{¶24} We conclude that the tip provided by Masten constituted a tip from a known informant that was part of the criminal milieu and thus, Augenstein needed to attest to the informant's veracity, reliability, and basis of knowledge or he had to independently corroborate the information. There is simply no attestation to the informant's veracity or reliability in the affidavit. Augenstein did not aver that either he or McClung had worked with Masten in the past or that he had previously provided reliable information. The affidavit did include an averment of the informant's "basis of knowledge," which was a first-hand account of his dealings with Siegel and the fact that he had seen drugs in Siegel's residence "in the past." However, although Augenstein averred that he independently corroborated information from Masten regarding Siegel's address and vehicle, he did not aver that he or McClung conducted any surveillance of dealings between Masten and Siegel, that he conducted any sort of a controlled buy involving Siegel, or that he reviewed any text message conversations or monitored any telephone calls between Masten and Siegel, which Masten alleged took place between the two. Further, as will be discussed in more detail below, there is case law which states that independent corroboration of residence and vehicle do not constitute evidence of drug trafficking and do not provide probable cause for the purpose of obtaining a search warrant. Thus, we are left with an unverified tip from a known criminal informant, coupled with independent police corroboration of Siegel's address and

vehicle, and a criminal history of a drug trafficking conviction from eight years prior, and a current, pending charge for "delivery of a controlled substance/drugs," without any additional information regarding when the charge was filed, where the charge was filed, or the facts forming the basis of the charge.

{¶25} In *State v. Baker*, *supra*, this Court upheld a search warrant that was issued on August 5, 2015, that was based upon information from a confidential informant, as well as a law enforcement officer's independent surveillance of a hotel room. *Baker* at ¶ 20. The confidential informant in *Baker* essentially advised there was suspicious activity in a hotel room that involved two black males and a White/Hispanic female arriving and then meeting up with different sets of black males for short periods of time. *Baker* at ¶ 12. Although the female stated she was staying with the two black males, one of which was allegedly her boyfriend, she didn't know their names. *Id.* The informant was able to obtain the name of the person who rented the room, which was Baker. *Id.* The detective then identified Baker in the OHLEG system and averred that he also personally observed Baker in and out of the room and that he matched the photo on OHLEG. *Id.* The detective also averred that Baker and the female left the room and traveled to the residence of a Taylor Kirby, who Narcotics Task Force officers stated was "moving very large amounts of heroin." *Id.* The detective averred that the task force had a controlled buy set up with Kirby for that evening, and had also conducted a

controlled buy from her two months prior. *Id.* After being shown a photo of Kirby, the detective was able to identify her as the female he had seen in the hotel room with Baker. *Id.* The detective's affidavit also contained information regarding Baker's criminal history, which included seven arrests for drug trafficking and four arrests for possession of drugs between 2008 and 2014, and a 2013 arrest for possession with intent to sell. *Id.* at ¶ 13. The affidavit also stated that Baker was driving a rental car, was on parole and was involved in a gang. *Id.* Citing the reliability of the information provided by the drug task force, the detective's independent corroboration of activity in the hotel room and his linking of Baker to Kirby, as well as the fact a rental car is often indicia of drug activity, this Court upheld the issuance of the warrant. *Id.* at ¶ 18.

{¶26} Compared to the case presently before us, we find that there were far more facts lending themselves to probable cause in *Baker* than in the present case. For example, the criminal history in *Baker* was far more extensive and seemed to be recurrent over a period of years, law enforcement had reliable information from other officers that had actually done substantive corroboration of one of the defendant's affiliates (Kirby) that involved a controlled buy and had another controlled buy presently scheduled, and the affiant observed the defendant with Kirby, who was a known drug dealer, at the hotel room. There was also an

averment about a rental car and short visits in and out of the hotel room, in which the affiant had personal knowledge and averred constituted indicia of drug activity.

{¶27} In *State v. Connin*, *supra*, the court upheld the issuance of a search warrant issued on April 15, 2019, that was based upon an initial complaint by a neighbor regarding a lot of traffic and short visits to a residence. *Connin* at ¶ 8. Additionally, the affidavit in support of the warrant described the traffic stop of another individual in January of 2019 in which marijuana was found, with the driver stating he had obtained the marijuana from Connin, and with the officer involved in the stop having personally observed the driver leaving Connin's residence. *Id.* at ¶ 9. The affidavit also referenced a police report from February of 2019 where Connin was a passenger in a vehicle that was stopped and marijuana was found. *Id.* The affidavit also described another traffic stop that occurred in April of 2019 in which the driver was found to possess cocaine and marijuana and stated he had bought both from Connin after work that day, and explained that he buys from Connin weekly. *Id.* at ¶ 10. The *Connin* court categorized the April 2019 driver as an "identified or first-time informant who implicated another while admitting his own criminal activity," which the court stated bolstered the tip and provided more reliability. *Connin* at ¶ 20. The court ultimately determined that the informant's statement, when viewed collectively with the other instances of

drug activity set forth in the affidavit, provided a sufficient basis to support the issuance of a search warrant. *Id.*

{¶28} Thus, in *Connin*, the issuance of the warrant was upheld based upon a tip from a citizen informant, the statement of the identified informant whose basis of knowledge included present drug activity, and three other instances of reported drug activity. Importantly, as set forth above, the *Connin* court quoted the requirements for an informant's tip in terms of "or" instead of "and," which is incorrect. As explained above, an affidavit supporting the issuance of a search warrant must contain an averment regarding the veracity, reliability, *and* basis of knowledge of an informant. As also set forth above, in lieu of being able to make such an averment, the reliability of the informant may also be established through independent police work and corroboration. Further, in *Connin*, it appears that the court's categorization of the informant not necessarily as a "known informant part of the criminal milieu," but rather as a "first time informant who implicated another while admitting his own criminal activity," led to its determination that the tip was more reliable.

{¶29} Here, as set forth above, in denying the motion to suppress the trial court reasoned that because the case involved an identified informant, rather than a confidential informant, that reliability need not be established. We find this reasoning to be incorrect in light of the foregoing caselaw. Further, we conclude

that Masten does not neatly fit into a single classification of informant. While he was not necessarily a known informant, in the sense that law enforcement had worked with him in the past and could attest to his reliability, he was an identified informant. Further, he was certainly part of the criminal milieu, more so than the informant in *Connin*, who was stopped for a traffic violation and was found to be in possession of drugs which he volunteered to law enforcement had been obtained from Connin. In the case presently before us, Masten was already being investigated in connection with a drug overdose death. Further, he was arrested not as part of a random traffic stop, but during a controlled buy of drugs. Thus, Masten was clearly part of the criminal milieu in a way that Connin was not. As such, we conclude that the tip provided by Masten was less reliable, standing on its own, than the tip provided in Connin, and needed to be substantiated.

{¶30} In reaching its decision, the *Connin* court contrasted the facts before it with the facts in *State v. Williams*, 173 Ohio App.3d 119, 2007-Ohio-4472, 877 N.E.2d 717, ¶ 13 (6th Dist.), which it had previously decided. The *Williams* case involved an affidavit that referenced a prior search of Williams' residence that yielded " 'massive' quantities of cocaine," which the court noted was actually identified, along with statements of four confidential informants who stated that Williams had a large amount of pure cocaine at his residence, that he was married to a teacher, and that he drove a green SUV with chrome rims. *Id.* at ¶ 15. The

*Williams* court ultimately held that the affidavit failed to establish probable cause. In reaching its decision, the court stated that although the affiant verified the informant's information regarding the vehicle driven by Williams and his residence address, "[t]hese facts do not provide a verification of drug activity." *Id.* at ¶ 15. The court also stated that Williams' "previous brush with the law," that occurred two years prior, was "not verification that current drug activity was afoot." *Id.* at ¶ 16. Importantly, in *Williams*, the court observed that although the officer stated in his affidavit that "his investigation confirmed drug activity by appellant and that the sources have been proven reliable[,]" that "[t]he affidavit contained no statements providing indicia of either the veracity of the informants, or the basis of knowledge." *Id.* at ¶ 17. The court further explained that " '[f]iltering the hearsay statement of an informant through a law enforcement agency establishes neither the truth of the statement nor the reliability of the informant.' " *Id.* at ¶ 17, quoting *State v. Dalpiaz*, 151 Ohio App.3d 257, 270, 2002-Ohio-7346, 783 N.E.2d 976, ¶ 43.

> {¶31} The *Dalpiaz* court explained as follows:
>
> Although the United States Supreme Court, in *Illinois v. Gates* (1983), 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527, abandoned the two-pronged test for probable cause for issuance of a search warrant set forth in *Aguilar v. Texas* (1964), 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and *Spinelli v. United States* (1969), 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, of (1) revealing the informant's basis of knowledge, and (2) providing sufficient facts to establish either the informant's veracity or the

reliability of the informant's report, those factors are still "relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability."

*Dalpiaz* at ¶ 35-37 (noting that not only did the affidavit at issue fail to suggest that the information was obtained from reliable sources, the affidavit failed to attribute much of the information to any particular source), quoting *Illinois v. Gates* at 233.

{¶32} Thus, the search warrant was found to be invalid in *Williams* despite the fact that the affiant made a general averment that the informants were reliable. In the case presently before us, the affidavit lacks even a general averment such as that. Here, Sergeant Augenstein did not aver in any manner that Masten had been determined to be truthful or reliable, or that Agent McClung had made such representations either.

{¶33} In *State v. Jones*, 3d Dist., Marion No. 9-20-04, 2020-Ohio-6667, the court upheld the issuance of a search warrant despite arguments that the criminal history was stale, there was not a sufficient nexus between information provided and Jones' residence, and that tips from a confidential informant and an anonymous source were not sufficiently credible. The court found that the affidavit at issue contained facts indicating a continuous course of drug trafficking over a period of years, which could be inferred from the affiant's recitation of Jones' historical information and prior drug convictions, as well as drug activity

leading up to the day of the issuance of the warrant. *Id.* at ¶ 6. Regarding the arguments about the reliability of the informants, the court discussed the three categories of informants and opined that the informants fell under either the anonymous informant or known informant category, both of which require police to provide "a certain level of corroboration for the information." *Id.* at ¶ 30. In upholding the search warrant, the court observed that " 'a known informant's word cannot be the sole basis for a finding of probable cause[,]' " and that " 'any information from an anonymous source generally requires independent police corroboration in order to support a probable-cause finding.' " *Id.* at ¶ 28-29, quoting *State v. Long*, *supra*, at ¶ 26 and *Maumee v. Weisner*, *supra*, at 300 (1999), in turn citing *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412 (1990).

{¶34} The *Jones* court ultimately found there was sufficient probable cause because 1) the detective described a controlled buy with Jones' brother, who the confidential informant reported was dealing drugs for Jones; 2) other statements made by the confidential informant were corroborated by information provided by the known informant, who was Jones' affiliate; 3) the affidavit contained an averment that the source of the information was reliable, had worked with detectives in the past, and "had been proven reliable based off their previous work * * *;" 4) the detective's review of a cell phone owned by Jones' affiliate which revealed drug-related texts between the affiliate and Jones; and 5) the detective's

observation of Jones frequenting the affiliate's residence for short periods of time, which the detective averred was consistent with "drug or money transactions." *Jones* at ¶ 31-33.

{¶35} The *Jones* decision establishes two things that are noteworthy. First, the decision specifically states that " 'when used in connection with other evidence, a suspect's criminal history can support a determination of probable cause.' " *Id.* at ¶ 22, quoting *State v. Shepherd*, 4th Dist. Scioto No. 07CA3143, 2008-Ohio-5355, ¶ 11. In the present case, while Siegel's criminal history (drug conviction eight years prior and current pending charge), in connection with other evidence, may support a determination of probable cause, there is no "other evidence" in the present case aside from the unsubstantiated word of a known, criminal informant. The only pieces of information the affiant in our case substantiated were that Siegel lived at a certain address and drove a certain car. As set forth in *Williams, supra*, corroboration of a residence and vehicle do not provide verification of drug activity. *Williams* at ¶ 15. Second, the *Jones* decision correctly states the requirements for a criminal informant's tip to be considered as probable cause. In particular, *Jones* states as follows: " 'Consequently, a probable-cause finding based on a known informant's tip requires that the affiant either attest to the informant's reliability, veracity and basis of knowledge or corroborate the informant's tip through independent police work.' [*Jones* at ¶ 28,

citing *State v. Long*, *supra*, at ¶ 26,] citing *Nunez*, *supra*, at ¶ 19-20. 'That is, a known informant's word cannot be the sole basis for a finding of probable cause.' " *Id.* *Nunez* explains that "even under the totality-of-the-circumstances standard, an affidavit in support of a search warrant must contain 'the presence of some indicia of veracity of the informant or the reliability of the information material to the probability of evidence of crime.' " *Nunez* at ¶ 19, quoting *State v. Williams*, *supra*.

{¶36} Finally, in *State v. Kiser*, 6th Dist. Sandusky No. S-14-024, 2015-Ohio-3076, a case which is heavily relied upon by Siegel, the appellate court reversed the lower court and found that the affidavit in support of the search warrant was insufficient. *Kiser* at ¶ 1. Kiser's motion to suppress argued that the affiant police officer failed to provide the basis for the confidential informant's reliability for the search, or for specific instances where the confidential informant was reliable in aiding other police investigations. *Id.* at ¶ 3. Kiser relied on *State v. Williams*, *supra*, in support. The State argued that the confidential informant's reliability was shown by the officer's statement that the informant had provided information and services to the Sheriff's Office on several prior occasions which the officer was able to verify as true. *Id.* at ¶ 4. The State also argued the confidential informant's basis of knowledge was demonstrated by the fact that he had been to Kiser's home in the prior 24 hours and had personally observed the

contraband.  *Id.*  The motion was, however, denied by the trial court.  *Id.* at ¶ 5.  A review of *Kiser* indicates that the probable cause affidavit essentially stated that a confidential informant informed law enforcement that he had been in contact with a third person who had arranged to purchase drugs from Kiser at Kiser's residence, and that within hours of that contact, the confidential informant personally made contact with Kiser at Kiser's residence, where Kiser showed the informant large amounts of cocaine.  *Id.* at ¶ 12.  In reversing the judgment of the trial court, the appellate court quoted *Illinois v. Gates* for the " 'veracity' and 'basis of knowledge' " requirement.  *Id.* at ¶ 11.  Although the court noted that it was not permitted to conduct a de novo analysis, the court nevertheless concluded the totality of the circumstances failed to support the probable cause basis for the issuance of the search warrant because the confidential informant's reliability was not established or independently corroborated by police investigation.  *Id.* at ¶ 18-19.  In reaching its decision, the *Kiser* court contrasted the facts of the case with other cases where the averments contained in the affidavit specifically described how an informant had been determined to be reliable in other cases.  *Id.* at ¶ 13-16.

{¶37} Although this Court is mindful that it is not permitted to conduct a de novo review of the affidavit to determine whether it contains sufficient probable cause, after reviewing the relevant law and the affidavit in this case, we must conclude that the totality of the circumstances fails to support the probable cause

basis for the issuance of the search warrant. In our view, based upon the foregoing caselaw, we conclude that whether the informant is anonymous, confidential, known and part of the criminal milieu, or a first-time, identified informant who implicates himself while implicating others, there must be some indicia of reliability demonstrated. For anonymous, confidential and known informants who are part of the criminal milieu, the indicia of reliability may be demonstrated either through representations by the affiant regarding his/her specific experience with the informant, or another member of law enforcement's specific experience with the informant, or, in lieu of such an averment, the reliability of an informant may be determined through independent police work. *See State v. Abernathy*, 4th Dist. Scioto No. 07CA3160, 2008-Ohio-2949, ¶ 26, citing *Maumee v. Weisner*, *supra*, at 299-300, in turn citing *Alabama v. White*, supra, at 329 and *Illinois v. Gates*, *supra*, at 233-234; *State v. Jones*, *supra*, at ¶ 28-30, citing *State v. Long*, *supra*, at ¶ 26, *State v. Nunez*, *supra*, at ¶ 19-20, *Maumee v. Weiser*, *supra*, at 300, and *Alabama v. White*, *supra*, at 329. It appears that the only category of informant whose statement is viewed as inherently reliable is that of a citizen informant.

{¶38} Here, the reliability of the informant was neither established nor was it independently corroborated by independent police work. Again, although Sergeant Augenstein did independently verify Seigel's address and vehicle, as set forth above, those facts do not constitute indicia of drug activity. Further, although

Seigel's criminal history can be considered in connection with other evidence, the only other indicia of drug activity in the record is an unverified tip from an informant, who was a criminal himself. Moreover, Siegel's sole drug-related conviction was from 8 years prior and there was no information regarding the basis of the now-pending drug charge. Additionally, although the informant stated he had seen drugs present at Siegel's residence "in the past," that does not constitute indicia of present drug-related activity. Finally, and importantly, the affiant in the present case made no attempt at all to even reference the informant's reliability.

{¶39} In fact, we find that Siegel's counsel correctly summed up the facts before the court at that suppression hearing as follows:

> But the officer in this case, when he submitted his affidavit, he should have done some investigation to determine whether or not there was any drug activity at Mr. Siegel's case [sic]. Because anybody could say – especially someone that had no reliability with the State before in the past – their – their individual in this – in this particular case, had no prior history of, you know, providing information to the State or providing reliable information about any kind of drug activity – anybody could just say, you know, I bought drugs from so-and-so, and he lives at such-and-such an address. And then the police go and they investigate and the guy lived at the address and he had some criminal history. And essentially, they got a warrant based upon those set of facts. In my opinion, and I believe in at least one Court's opinion in the State of Ohio, that's not sufficient, because you have to take the additional step of confirming whether or not there's drug activity at the residence. That was not done here. They just simply relied upon the information of an – of a person that they had arrested on a drug buy, that they had no prior history with whatsoever.

{¶40} In light of the foregoing, we find this case aligns very closely with

*State v. Williams* and *State v. Kiser, supra*, which both found search warrants to be

invalid because they were not founded upon probable cause. Thus, we must next

determine whether the good faith exception to the exclusionary rule applies.

The Exclusionary Rule and the Good Faith Exception

{¶41} "When evidence is obtained in violation of the Fourth Amendment,

the judicially developed exclusionary rule usually precludes its use in a criminal

proceeding against the victim of the illegal search and seizure." *State v. Johnson*,

48 Ohio App.3d 256, 259, 549 N.E.2d 550 (4th Dist. 1988), citing *Illinois v. Krull*,

480 U.S. 340, 347, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987); *Weeks v. United States*,

232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); *Mapp v. Ohio*, 367 U.S. 643, 81

S.Ct. 1684, 6 L.Ed.2d 1081 (1961). However, the exclusionary rule does not "bar

evidence obtained by law enforcement officers acting in objectively reasonable

reliance on a search warrant issued by a detached and neutral magistrate, even

though the warrant was ultimately found to be unsupported by probable cause."

*State v. Owens*, 3rd Dist. Marion, 2017-Ohio-2590, 90 N.E.3d 189, ¶ 20-21, citing

*State v. George*, *supra*, at 330; *United States v. Leon*, *supra*, at 913.

> "The deterrent purpose of the exclusionary rule necessarily
> assumes that the police have engaged in willful, or at the very
> least negligent, conduct which has deprived the defendant of
> some right. * * * Where the official action was pursued in
> complete good faith, however, the deterrence rationale loses
> much of its force."

*Leon* at 919, quoting *Michigan v. Tucker*, 417 U.S. 433, 447, 94 S.Ct. 2357, 41

L.Ed.2d 182 (1974).

{¶42} Nevertheless, under the good faith exception to the exclusionary rule,

suppression remains an appropriate remedy in four circumstances:  1) the

magistrate was misled by information in an affidavit that the affiant knew was false

or would have known was false except for his reckless disregard of the truth; 2) the

issuing magistrate wholly abandoned his judicial role; 3) an officer purports to rely

upon a warrant based on an affidavit "so lacking in indicia of probable cause as to

render official belief in its existence entirely unreasonable;" or 4) the warrant may

be so facially deficient that the executing officers cannot reasonably presume it to

be valid.  *State v. George, supra*, at 331, citing *Leon* at 923.

{¶43} In *State v. Keefer*, 2019-Ohio-2419, 138 N.E.3d 519, ¶ 29 (4th Dist.),

this Court noted that the law was unsettled as to whether a reviewing court may

look beyond the four corners of the affidavit in determining whether the good faith

exception to the exclusionary rule applies.  However, this Court sided with the

appellate districts that permit trial courts to look beyond the affidavit to determine

the good faith exception.  For instance, in *Keefer* we agreed "that permitting a

court to look beyond the affidavit to determine whether the good faith exception

applies ' " 'is consistent with the statement in *Leon* that 'all of the circumstances'

may be considered in determining whether a reasonably well-trained police officer

would have known that the search was illegal despite the magistrate's authorization." ' " *Keefer* at ¶ 30, quoting *State v. Berry*, 5th Dist. Delaware No. 2006CA0600035, 2007-Ohio-4122, ¶ 43, in turn quoting *Leon*, *supra*. Since *Keefer* was decided, the Supreme Court of Ohio addressed the issue and ultimately determined that a court may look to information outside the four corners of the affidavit when evaluating an officer's good faith reliance on a warrant. *State v. Dibble*, 159 Ohio St.3d 322, 2020-Ohio-546, 150 N.E.3d 912, ¶ 20.

{¶44} Here, however, there is nothing in the record to suggest that the judge who authorized the search warrant, or the judge who heard the suppression motion, considered anything beyond the four corners of the affidavit itself. If testimony was taken, it is not part of the record before us, unlike the situation in *Keefer*, where the executing officer testified during the suppression hearing "that he relied upon the prosecutor and the judge to acquire the warrant * * *." *Keefer*, *supra*, at ¶ 40. What is apparent from the record, however, is that Sergeant Augenstein was the officer who supplied the affidavit in support of the search warrant, and he was also the officer who executed the search of the residence, along with other officers. *See State v. Dalpiaz, supra*, at ¶ 40 (noting the fact that the same officer obtained the search warrant and also executed the search warrant was "particularly apt" in holding that the good faith exception to the exclusionary rule did not apply). Because we also find this factor "particularly apt" in the present case, we not only

find that the affidavit failed to demonstrate probable cause in support of the issuance of the search warrant, we further conclude that the affidavit in support of the search warrant was "so lacking in indicia of probable cause" that it rendered official belief in its existence entirely unreasonable. Thus, Sergeant Augenstein's reliance upon the warrant was not objectively reasonable.

{¶45} Here, Sergeant Augenstein did not simply execute a warrant in reliance upon the judge having determined that the underlying affidavit in support contained sufficient probable cause, he himself authored the affidavit that was filed in support of the search warrant. We conclude that the affidavit at issue here was so lacking in indicia of probable cause that a reasonably well-trained police officer would have known that the search was illegal despite the judge's authorization. As observed in *State v. Williams*, *supra*, "the good-faith exception * * * is not a license to give an otherwise insufficient warrant validity." *Williams* at ¶ 26. Sergeant Augenstein, who we presume is a reasonably well-trained officer, would have known, or at least should have known, that this affidavit was not sufficient and, as such, the facts presently before us warrant application of the exclusionary rule and do not fit within the good faith exception to the rule.

{¶46} We hold, therefore, that Siegel's first assignment or error has merit and that the trial court erred in denying his motion to suppress. Accordingly, the judgment of the trial court is reversed and this cause is remanded for further

proceedings consistent with this opinion.  Further, because our resolution of

Siegel's first assignment of error is dispositive of this matter, his remaining

assignments of error have been rendered moot and we do not reach them.

**JUDGMENT REVERSED AND CAUSE REMANDED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and costs be assessed to Appellee.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Wilkin, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**